Peebles agt. Rogers.

# SUPREME COURT.

### PEEBLES agt. ROGERS.

Where service of papers is made by mail, by depositing in a post office other than that where the attorney making the service resides, the attorney upon whom they are served can not take advantage of such service *if the papers are received in time.* The attorney making the service in such case takes the risk of their being received in time.

A County Judge has power, independent of the Code, to grant an order extending the time to answer.

There is nothing in any part of the Code which takes away any of the powers given to county judges by the 29th section of the judiciary act of 1847, except that part of section 401 which enacts that *"motions must* be made within the district in which the action is triable, or in a county adjoining that in which it is triable, except &c."  And this clause must be understood as applying exclusively to motions made upon *notice.*

The reasonable construction to be given to the phrase in § 401, "the county where the action is triable," includes any county in which according to sections 123, 124 and 125, the plaintiff is at liberty to have the action tried.

*Montgomery Circuit and Special Term, November*, 1850.
This action was commenced to recover from the defendant the amount due on two promissory notes, and also to recover damages on a written contract in relation to a farm let by the plaintiff to the defendant.   The summons without the complaint was served on the 17th day of September last.

On the second day of October, and five days before the time of answering expired, the defendant's attorney wrote to the plaintiff's attorney for a copy of the complaint, and giving him notice that he was retained by the defendant to defend the action.   As this request was not made within ten days after the service of the summons, as required by section 130 of the Code, the plaintiff's attorney disregarded it, and made no answer to the request.

On the fifth day of October the defendant's attorney, upon an affidavit made by him, showing that the action was commenced upon a written contract and that the plaintiff resided in the county of Otsego and the defendant in the county of Montgomery, and that the defendant had not been able to procure a copy of the said contract, applied to the judge of the county court of Montgomery and obtained an order from him extending the time *in*

Peebles agt. Rogers.

which to answer the complaint twenty days from the date of the order. On the same day the defendant's attorney, who resides at Port Jackson in the town of Florida, served a copy of the affidavit and order on the plaintiff's attorney, by mailing the same at Amsterdam, in the county of Montgomery, addressed to the plaintiff's attorney at Cherry Valley, by whom they were, on the 8th of October, remailed to the defendant's attorney enclosed in a letter, a part of which is as follows: "I enclose to you the copy affidavit and order, supposing that the order granted by Judge Belding does not extend the time or stay plaintiff's proceedings. I should not notice the defect in an ordinary case, but in this case, as I understand it and fully believe, the defendant is utterly irresponsible and the amount claimed is honestly and legally due to the plaintiff, the defendant having no defence, at any rate, my client should not be put to the expense of litigating with a man of whom the *costs* can not be collected."

By the same mail, the plaintiff's attorney forwarded a notice to the defendant's attorney, that the clerk would at his office in Cooperstown, on the 22d day of October at twelve o'clock M., insert in the entry of judgment the costs and disbursements allowed by law.

The defendant upon affidavit of merits, and the above facts, now moved to set aside the said judgment for irregularity, with costs, and for an order requiring the plaintiff or his attorney to deliver to or allow the defendant's attorney to take a copy of the agreement mentioned in the complaint, or for such other order as may be just in the premises.

JAMES E. DEWEY, *for Plaintiff*.

CULVER PETERSON, *for Defendant*.

CADY, Justice.—The attorney for the plaintiff objects to the service of the papers, as they were mailed at Amsterdam, although the defendant's attorney resides at Port Jackson, and he refers to the case of Schenck vs. McKie (4 *How. Pr. R.* 246). In that case the papers were not received until the time to answer had expired, unless the service was deemed to have been made when

27

the papers were deposited in the post office. As I understand the case cited, it only shows, that papers will not be deemed to be served when deposited in a post office, unless deposited in the post office in the place where the attorney resides who makes the service. If he deposites them in another post office he takes on himself the hazard of their being received in time by his ad-. versary. If received in time no matter where they were mailed; that the order of Judge Belding was received in time is not disputed in this case.

The attorney for the plaintiff insists that Judge Belding had no authority to grant the order, as the place for trial designated in the complaint, was the county of Otsego and he resided in the county of Montgomery. The attorney for the plaintiff has referred to the case of Eddy vs. Howlett (2 *Code Reporter*, 76), as an authority for saying that the order granted by Judge Belding was a nullity; but as I understand that case, it does not prove that Judge Belding acted without authority.

In that case a county judge had granted an injunction by order, as a provisional remedy, and he had no authority to grant such an order except it was given to him by the Code. In that case, the injunction was granted by a county judge of the county of Kings, in an action triable in the city of New York. The case does not show whether the motion for the injunction was made upon notice or without notice; but whether it was made upon, or without notice, section 401 of the Code proved it void.

By that section it is enacted that "an application for an order is a motion," and that "motions may be made in the first judicial district to a judge or justice out of court except for a new trial on the merits," and that "motions must be within the district in which the action is triable, or in the county adjoining that in which it is triable, except that where the action is triable in the first judicial district, the motion *must* be made therein." There is nothing in this part of the section which limits it to motions made upon notice and if it includes motions whether made upon notice or without notice, the injunction was granted without authority, as the motion for it was not made in the first judicial district.

Peebles agt. Rogers.

The other part of the section is as follows: "Orders made out of court, without notice, may be made by any judge of the court, in any part of the state; and they may also be made by a county judge of the county where the action is *triable*, except to stay proceedings after verdict."

If the motion for an injunction in the case of Eddy vs. Howlett was made without notice, then the county judge of the county of Kings had no authority to hear the motion or grant the order, as the action was triable in the city of New York, and he had no authority but by the Code  That case was no doubt correctly decided, but it did not necessarily call for the construction of the 29th section of the judiciary act or any part of the Code except section 401.

I do not regard that case as an authority for saying that the order made by Judge Belding was void.  No county judge has power to grant an injunction as a provisional remedy except by the Code, but a county judge has power, independent of the Code, to grant an order extending the time in which to answer.

By 2 R. S., 279, section 18, Supreme Court Commissioners were required to perform all the duties and to execute every act, power and trust which a justice of the Supreme Court might perform out of court in all civil cases, except as therein otherwise provided; and by section 32, page 281, the same power is given to the judges of the county courts, being of the degree of counsellor in the Supreme Court.

By the 8th section of the 14th article of the Constitution of 1846, the office of Supreme Court Commissioner was abolished, and that may have been understood as taking from county judges all power to do anything in relation to motions in the Supreme Court; but by the 29th section of " an act in relation to the judiciary," passed 12th May 1847, it is enacted that "county judges, in their respective counties shall have power to perform all the duties and do all the acts now required to be done and performed by the judges of the county courts when not holding county courts, or any one or more of them, at chambers or otherwise, so far as those acts and duties are. consistent with the

constitution and the provisions of this act." At the time this enactment was made, judges of county courts, if of the degree of counsellor in the Supreme Court were required to perform all the duties and to execute every act, power and trust which a justice of the Supreme Court might perform out of court; and they must now have all the powers granted by the act of the 12th of May 1847, unless the 29th section of that act has been repealed in whole or in part. I can discover no act which in terms repeals that section in whole or in part.

What is the effect of the words "in their respective counties" in that section? Do those import any thing more than would have been implied without them, that the judges of the county courts can not perform official duties out of their respective counties? They are local officers (12 *Wend.* 139, Jackson vs. Lake).

Although a county judge must perform his official duties within his county, yet his acts when done, may have effect in any and all parts of the state. Before the code took effect, a county judge might have signed a judgment record in the Supreme Court, no matter where the venue in the action was laid, or where the record was to be filed. He could perform that duty only in his own county, but the record when filed and the judgment when docketed would be a lien on the lands of the debtor in every county in the state to which a transcript of the judgment should be sent. Such judges could take the acknowledgment of bail in actions in the Supreme Court, and the acknowledgment of the satisfaction of judgments in the Supreme Court.

The 24th section of the judiciary act required that a general term of the Supreme Court organized by that act, should be held at the Capitol in the city of Albany, amongst other things "to establish, revise and alter the rules of the said court;" and in obedience to that law a term of the Supreme Court was held, and the rules established, revised and altered; and by the 89th, 90th and 91st rules then adopted, the fact that there were officers other than the justices of the Supreme Court who had authority to grant orders in actions pending in the Supreme Court, was fully recognized. The office of Supreme Court Commissioner was

abolished, but there were then county judges, and the 29th section of the judiciary act was then in full force, and they were the officers to whom the above rules in fact referred.

How far has the Code repealed or modified the said 29th section? There is no allusion in the Code to that section, yet if there be any enactments in the Code in direct conflict with it, those enactments being the last expression of the legislative will, must be regarded as the law. By one part of section 401 of the Code, orders out of court, and without notice, "may also be made by county judges of the county where the action is triable, except to stay proceedings after verdict." This clause confers no new power upon county judges, and as it is in the affirmative it takes from them no power which they before had.

By section 403 it is enacted that " in an action in the Supreme Court a county judge, in addition to the powers conferred upon him by this act, may exercise, within his county, the powers of a judge of the Supreme Court at chambers, according to the existing practice, except as otherwise provided for in this act." In this the legislature of 1849, recognized the fact that a county judge then had, in actions pending in the Supreme Court, the power of a judge of that court at chambers, "except as otherwise provided for in that act." There is nothing in this section, or in any part of the Code which takes away any of the powers given to county judges by the 29th section of the judiciary act, except that part of section 401, which enacts that "*motions must* be made within the district in which the action is triable, or in a county adjoining that in which it is triable, except, &c." If this clause applies to all motions made in court or out of court, upon notice or without notice, then no county judge can hear a motion and grant an order in an action in the Supreme Court, unless it be triable in his county, or in an adjoining county; and even then Judge Belding had authority to make the order, as he resides in a county adjoining that designated as the place of trial.

The clause above referred to, must be understood as applying exclusively to motions made upon notice, otherwise it can not be reconciled with the next clause in the section. And the only

limitation which I can discover to the powers of a county judge to grant an order enlarging the time to answer, is in 2 R. S. 281, sections 29 and 32; he is in no case to grant an order on the application of an attorney or party residing more than forty miles from the residence of such judge, if there be an officer authorized to grant such order residing within forty miles of the applicant therefor. The Code ought to have such an interpretation as will most effectually promote the convenience of the parties litigating.

There are many counties in the state in which no justice of the Supreme Court resides, and the justices of that court in the country are much of their time from home; and out of the large cities there are no officers, other than the county judges, who are authorized to do business which justices of the Supreme Court may do out of court; and the convenience of parties in the country demands, that acts giving powers to county judges to do chamber business should be liberally construed.

In what sense did the legislature in section 401 of the Code, use the word *triable* in the phrase "*in which the action is triable?*" In its popular sense, it means any place in which the action may be tried. An action in the Supreme Court may by an order of the court be tried in any county in the state; the legislature did not use the word *triable* in section 401 in that sense; for its use in that sense would, in that section, create no limitation.

But may it not reasonably be said the words in section 401, "the county where the action is triable," includes any county in which, according to sections 123, 124 and 125, the plaintiff is at liberty to have the action tried?

By section 123, certain actions *must* be tried in the county in which the subject of the action or some part of it is situated, subject to the power of the court to change the place of trial. For example, a farm is part in one county and part in another; an action is to be brought to recover it—where will the action be *triable?* In either of the two counties—the plaintiff has his election in which county to try the cause. Suppose he lives in one of the counties and the defendant in the other; can any possible reason be assigned why the judge in one of the counties

should have, and the judge in the other should not have power to grant an order enlarging the time to answer or reply in the cause?

By section 124 certain actions are specified which *must* be tried in the county where the cause or some part of it arose.

And by section 125, in all other actions, the action shall be tried in the county in which the parties or any of them shall reside at the commencement of the action; or if none of the parties reside in the state, the same may be tried in any county which the plaintiff may designate in his complaint.

In this case, the action is upon contracts, the residence of the parties controls as to the place of trial; the plaintiff resides in Otsego and the defendant in Montgomery; the action was triable in either county at the election of the plaintiff.

If the judgment in this case be set aside, the plaintiff can by amending his complaint change the place of trial from Otsego to Montgomery; if that be done would it take from the county judge of Otsego the power he now has to make an order in the cause? And can a reason be suggested, why the county judge in Montgomery should not have power to enlarge the time in which the defendant may answer, as well as the county judge in Otsego should have power to enlarge the time in which the plaintiff may reply? So take the case where neither party resides in the state, the plaintiff may, if the action be founded on contract, select any county as the place of trial and in such case, where would be the injustice to permit the defendant to apply to the county judge nearest to him for an order to enlarge the time in which to answer? I can discover none, nor can I believe that there is any law rendering the order made by Judge Belding in this case void; and therefore I am of opinion that the judgment in this cause be set aside and that the defendant have twenty days in which to answer the complaint, and that the costs of this motion abide the event of the suit.